**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACKIE BARCLIFF, ISAIAH CHARLES, JONATHAN CONTRERAS, KEYSHAWN CROSBY, HECTOR DIAZ, LENORZA EVANS, AZAR FEDCHER, TODD GUERRIERO, MICHAEL GUZMAN, JUAN INGLES, JIMMY JEROME, GREGORY JOHNSON, FRANCISCO MEDINA, ANTHONY O'NEIL, ANTONIO ORTA, FREDDY PEREZ, GARY RICHARDSON, JIMMY RODRIGUEZ, JOSHUA SANTIAGO, TRAVIS SCOTT, VICTOR SMIRNOV, and JUSTIN SMITH,

                     Plaintiffs,

           v.

THE CITY OF NEW YORK,

                     Defendant.

Case No.: 22-CV-9762

**COMPLAINT**

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Jackie Barcliff, Isaiah Charles, Jonathan Contreras, Keyshawn Crosby, Hector Diaz, Lenorza Evans, Azar Fedcher, Todd Guerriero, Juan Ingles, Jimmy Jerome, Gregory Johnson, Francisco Medina, Anthony O'Neil, Antonio Orta, Freddy Perez, Gary Richardson, Jimmy Rodriguez, Joshua Santiago, Travis Scott, Victor Smirnov, and Justin Smith (hereinafter collectively known as "Plaintiffs") by and through their attorneys, Danny Grace PLLC, as and for their Complaint in this action against The City of New York ("City"), allege upon personal knowledge and upon information and belief as to the matters as follows:

## NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages to redress violations of the Plaintiffs' rights under the Constitution of the United States and the Constitution of the State of New York.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 for violations of the Plaintiffs' rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, the common laws of the State of New York, and the Constitution of the State of New York.

3.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4.      An award of costs and attorney's fees is authorized pursuant to 42 U.S.C. §1988.

5.      Venue is proper in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §1391, because the acts and omissions described herein occurred in the jurisdiction of the Southern District of the State of New York.

6.      Any and all other prerequisites to the filing of this suit have been met.

## PRELIMINARY STATEMENT

7.      In 2014, the then Mayor, Bill de Blasio, hosted a media roundtable on reform at Rikers Island Correctional Facilities ("Rikers"). The Mayor acknowledged that Rikers was an "institution that deeply needs a culture change – and the leadership, the investment, all the other pieces necessary to create change[1]." The Mayor went on to say that "Let's face it – for many years, Rikers Island has been a dehumanizing environment – an environment unfair to the people who

---

[1] https://www1.nyc.gov/office-of-the-mayor/news/932-14/transcript-mayor-de-blasio-hosts-media-roundtable-reform-rikers-island-correctional

work there, unfair to the inmates. It created a dynamic of conflict and violence that became pervasive. The violence against correction officers, the violence against healthcare workers, the violence among inmates, the violence against inmates – all of these became entirely too common and were tolerated, and became dynamics that, to some, were intractable, were impossible to change. We have never had that view in this administration. We believe change is possible, change is necessary – and we've put a series of steps in place to achieve that change and we won't stop until the change is not only achieved but is deep-seated."

8.     While Mayor de Blasio finally acknowledged the barbaric and intractable conditions at Rikers in 2014, in 2021, the New York Times found that there had in fact been decades of violence, mismanagement, and dysfunction at Rikers. [2]

9.     Fast forward to 2022, and the situation at Rikers has only worsened. The conditions at Rikers are so notorious, so horrifying, so well-published, that on October 17, 2022, a march to Gracie Mansion was held to urge Mayor Adams to close Rikers once and for all. [3]

10.     In short, Rikers is an institution that has careened entirely out of control: woefully mismanaged, unrelentingly violent, perpetrated by both inmates and correction officers, rampant absenteeism of correction officers, what amounts to a policy of understaffing, all resulting in violation after violation of its detainees' constitutional rights. [4]

## PARTIES

11.     The Plaintiff Jackie Barcliff ("Mr. Barcliff") is a 54-year-old man. Mr. Barcliff was held in the Otis Bantum Correctional Center on Rikers Island, New York ("OBCC") Intake Cell, from September 5, 2021, to September 19, 2021.

---

[2] https://www.nytimes.com/2021/12/31/nyregion/rikers-island-correction-officers.html
[3] https://abc7ny.com/rikers-island-protest-mayor-adams/12340509/
[4] https://www.nytimes.com/2021/12/31/nyregion/rikers-island-correction-officers.html

12.     The Plaintiff Isaiah Charles ("Mr. Charles") is a 21-year-old man. Mr. Charles was held in the OBCC Intake Cell from August 20, 2021, to August 26, 2021.

13.     The Plaintiff Jonathan Contreras ("Mr. Contreras") is a 28-year-old man. Mr. Contreras was held in the OBCC intake cell from August 18, 2021, to October 8, 2021.

14.     The Plaintiff Keyshawn Crosby ("Mr. Crosby") is a 24 year old man. Mr. Crosby was held in the OBCC intake cell from August 20, 2021, to August 26, 2021.

15.     The Plaintiff Hector Diaz ("Mr. Diaz") is a 58-year-old man. Mr. Diaz was held in the OBCC intake cell from September 17, 2021, to September 24, 2021.

16.     The Plaintiff Lenorza Evans ("Mr. Evans") is a 60-year-old man. Mr. Evans was held in the OBCC intake cell from September 15, 2021, to September 26, 2021.

17.     The Plaintiff Azar Fedcher ("Mr. Fedcher") is a 27-year-old man. Mr. Fedcher was held in the OBCC intake cell from September 10, 2021, to September 21, 2021.

18.     The Plaintiff Todd Guerriero ("Mr. Guerriero") is a 47-year-old man. Mr. Guerriero was held in the OBCC intake cell from August 29, 2021, to September 5, 2021.

19.     The Plaintiff Michael Guzman ("Mr. Guzman") is a 43-year-old man. Mr. Guzman was held in the Rikers OBCC intake cell on September 18, 2021.

20.     The Plaintiff Juan Ingles ("Mr. Ingles") is a 41-year-old man. Mr. Ingles was held in the OBCC intake cell from September 6, 2021, to September 17, 2021.

21.     The Plaintiff Jimmy Jerome ("Mr. Jerome") is a 28-year-old man.  Mr. Jerome was held in the OBCC intake cell from September 10, 2021, to September 21, 2021

22.     The Plaintiff Gregory Johnson ("Mr. Johnson") is a 59-year-old man. Mr. Johnson was held in the OBCC intake cell from July 29, 2021, to August 5, 2021.

23.     The Plaintiff Francisco Medina ("Mr. Medina") is a 36-year-old man. Mr. Medina was held in the OBCC intake cell from September 9, 2021, to September 17, 2021.

24.     The Plaintiff Anthony O'Neil ("Mr. O'Neil") is a 49-year-old man.  Mr. O'Neil was held in the OBCC intake cell from August 18, 2021, to September 4, 2021.

25.     The Plaintiff Antonio Orta ("Mr. Orta") is a 38-year-old man. Mr. Orta was held in the OBCC intake cell from August 28, 2021, to September 15, 2021.

26.     The Plaintiff Freddy Perez ("Mr. Perez") is a 36-year-old man. Mr. Perez was held in the OBCC intake cell from September 9, 2021, to September 17, 2021.

27.     The Plaintiff Gary Richardson ("Mr. Richardson") is a 59-year-old man. Mr. Richardson was held in the OBCC intake cell from July 20, 2021, to July 30, 2021.

28.     The Plaintiff Jimmy Rodriguez ("Mr. Rodriguez") is a 29-year-old man. Mr. Rodriguez was held in the OBCC intake cell from June 26, 2021, to September 17, 2021.

29.     The Plaintiff Joshua Santiago ("Mr. Santiago") is a 36-year-old man. Mr. Santiago arrived was held in the OBCC intake cell from August 24, 2021, to September 15, 2022.

30.     The Plaintiff Travis Scott ("Mr. Scott") is a 38-year-old man. Mr. Scott was held in the OBCC intake cell from August 18, 2021, to August 27, 2021.

31.     The Plaintiff Victor Smirnov ("Mr. Smirnov") is a 44-year-old man. Mr. Smirnov was held in the OBCC intake cell from July 26, 2021, to July 31, 2021.

32.     The Plaintiff Justin Smith ("Mr. Smith") is a 32-year-old man. Mr. Smith was held in the OBCC intake cell from August 26, 2021, to September 17, 2021.

33.     Defendant the City of New York is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain a municipal jail system. The New York City Department of Correction ("DOC") is an agency of the City of New

York and operates and maintains Rikers Island Correctional Facility. Defendant the City of New York assumes the risks incidental to the operation and maintenance of Rikers Island and the employment of its staff and correction officers.

## FACTUAL ALLEGATIONS

34.     Plaintiffs were detained in the Rikers Island Correctional Facility, Otis Bantum Correction Center Intake Cell ("Rikers") during the Summer and Fall of 2021. At that time, the facility was grossly under-staffed, overcrowded, and the detainees were subjected to horrific conditions, without sufficient supervision from Correction Officers.[5]

35.     Fifty or more detainees were held in an Intake Cell that was designed to hold twenty-five individuals. Moreover, each of the herein Plaintiffs was held in the Intake Cell for longer than the prescribed 24-hour period before being transferred to a cell/housing unit.[6]

36.     Rikers has a long and well-documented history and a de facto policy of insufficient staffing, the result of which is a virtual chaos, where detainees are subjected to violence and other risks and horrors, deprived of basic human needs, and suffer inhumane living conditions. [7]

37.     Further, the detainees are incarcerated in facilities that are decrepit, unsanitary and hazardous, plagued with vermin, and that feature antiquated and inoperative plumbing.[8]

38.     Rikers has a long and documented history of overcrowding, mismanagement, poor leadership, incompetent supervisory staff, unqualified and unfit Correction Officers, inadequate medical care, and the use of excessive force by its correction officers. [9]

---

[5] See https://nymag.com/intelligencer/2021/10/new-york-post-photos-show-horrific-overcrowding-at-rikers.html
[6] See https://www.nysfocus.com/2022/10/17/records-tampering-rikers-intake-time-limit/
[7] See https://www.nydailynews.com/new-york/nyc-crime/ny-rikers-board-of-correction-suicides-20210901-yfj4tzgonzebnecwtitdwinc3e-story.html
[8] See https://www.courthousenews.com/at-pivotal-time-for-rikers-experts-say-federal-control-is-best-path-forward-%EF%BF%BC/
[9] See https://nypost.com/2021/10/21/photos-inside-rikers-island-expose-hellish-deadly-conditions/

39.     The City of New York has been aware of the conditions set forth above since at least 2014.[10]

40.     Further, each of the herein Plaintiffs was awaiting trial at the time of the events described herein.  None had been convicted of the crime for which they were charged.

41.     **Jackie Barcliff** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for fifteen (15) days.  Mr. Barcliff was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Barcliff was placed in an Intake Cell for fifteen (15) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Barcliff to a cell/housing unit in a timely and adequate manner. Mr. Barcliff was deprived of running water, toilet facilities, showers, medication, adequate food for over fifteen (15) days. Mr. Barcliff was forced to sleep on the floor of the Intake Cell. Mr. Barcliff was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Barcliff was exposed to fires set in the Intake Cell by other inmates. Mr. Barcliff was assaulted on two (2) occasions by several inmates and correctional officers. Mr. Barcliff was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Barcliff was held in the OBCC intake cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Barcliff. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant

---

[10] https://www1.nyc.gov/office-of-the-mayor/news/932-14/transcript-mayor-de-blasio-hosts-media-roundtable-reform-rikers-island-correctional

violated Mr. Barcliff's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

42.    **Isaiah Charles** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for seven (7) days. Mr. Charles was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Charles was placed in an Intake Cell for seven (7) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Charles to a cell/housing unit in a timely and adequate manner. Mr. Charles was deprived of running water, toilet facilities, showers, medication, adequate food for over seven (7) days. Mr. Charles was forced to sleep on the floor of the Intake Cell. Mr. Charles was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Charles was exposed to fires set in the Intake Cell by other inmates. Mr. Charles was assaulted by several inmates and correctional officers. Mr. Charles was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Charles was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Charles. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Charles' civil rights in failing to provide for the safety, care and well-being of the Plaintiff who is in the

Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

43.     **Jonathan Contreras** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eleven (11) days. Mr. Contreras was placed in an Intake Cell for eleven (11) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Contreras to a cell/housing unit in a timely and adequate manner. Mr. Contreras was deprived of running water, toilet facilities, showers, medication, adequate food for over eleven (11) days. Mr. Contreras was forced to sleep on the floor of the Intake Cell. Mr. Contreras was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Contreras was exposed to fires set in the Intake Cell by other inmates. Mr. Contreras was assaulted by several inmates and correctional officers. Mr. Contreras was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Contreras was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Contreras. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Contreras' civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

44.     **Keyshawn Crosby** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for seven (7) days. Mr.

Crosby was placed in an Intake Cell for seven (7) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Crosby to a cell/housing unit in a timely and adequate manner. Mr. Crosby was deprived of running water, toilet facilities, showers, medication, adequate food for over seven (7) days. Mr. Crosby was forced to sleep on the floor of the Intake Cell. Mr. Crosby was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Crosby was exposed to fires set in the Intake Cell by other inmates. Mr. Crosby was assaulted by several inmates and correctional officers. Mr. Crosby was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Crosby was left in an Intake Cell without any correctional officers to oversee the inmates. Mr. Crosby was subject to observing another inmate commit suicide. Mr. Crosby was subject to observing another inmate being raped. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Crosby. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Crosby's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who is in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

45. **Hector Diaz** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eight (8) days. Mr. Diaz was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Diaz was placed in an Intake Cell for eight (8) days when he was only supposed to be held in the Intake Cell for one (1) day. The

Defendant failed to process and assign Mr. Diaz to a cell/housing unit in a timely and adequate manner. Mr. Diaz was deprived of running water, toilet facilities, showers, medication, adequate food for over eight (8) days. Mr. Diaz was forced to sleep on the floor of the Intake Cell. Mr. Diaz was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Diaz was exposed to fires set in the Intake Cell by other inmates. Mr. Diaz was assaulted by several inmates and correctional officers. Mr. Diaz was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Diaz was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Diaz. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Diaz's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

46.    **Lenorza Evans** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eleven (11) days. Mr. Evans was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Evans was placed in an Intake Cell for eleven (11) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Evans to a cell/housing unit in a timely and adequate manner. Mr. Evans was deprived of running water, toilet facilities, showers, medication, adequate food for over eleven (11) days. Mr. Evans was forced to sleep on the

floor of the Intake Cell. Mr. Evans was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Evans was exposed to fires set in the Intake Cell by other inmates. Mr. Evans was assaulted by several inmates and correctional officers. Mr. Evans was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Evans was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Evans. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Evans' civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

47.    **Azar Fedcher** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eleven (11) days. Mr. Fedcher was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Fedcher was placed in an Intake Cell for eleven (11) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Fedcher to a cell/housing unit in a timely and adequate manner. Mr. Fedcher was deprived of running water, toilet facilities, showers, medication, adequate food for over eleven (11) days. Mr. Fedcher was forced to sleep on the floor of the Intake Cell. Mr. Fedcher was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell.

Mr. Fedcher was exposed to fires set in the Intake Cell by other inmates. Mr. Fedcher was assaulted by several inmates and correctional officers. Mr. Fedcher was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Fedcher was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Fedcher. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Fedcher's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

48. **Todd Guerriero** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eight (8) days. Mr. Guerriero was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Guerriero was placed in an Intake Cell for eight (8) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Guerriero to a cell/housing unit in a timely and adequate manner. Mr. Guerriero was deprived of running water, toilet facilities, showers, medication, adequate food for over eight (8) days. Mr. Guerriero was forced to sleep on the floor of the Intake Cell. Mr. Guerriero was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Guerriero was exposed to fires set in the Intake Cell by other inmates. Mr. Guerriero was assaulted by several inmates and correctional officers. Mr. Guerriero was exposed to a

chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Guerriero was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Guerriero. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Guerriero's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

49. **Michael Guzman** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for one (1) day. Mr. Guzman was assaulted by several inmates. Mr. Guzman was exposed to a chemical agent and the defendants failed to properly and adequately decontaminate the Intake Cell. Mr. Guzman was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Guzman. The Defendant, through its servants, agents and/or employees, were negligent in failing to maintain, operate and control the correctional facility in a safe and proper manner. The Defendant failed to provide adequate supervision of the other inmates in its custody and care and employment. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Guzman's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

50.    **Juan Ingles** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for thirteen (13) days.  Mr. Ingles was placed  in an Intake Cell for thirteen (13) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Ingles to a cell/housing unit in a timely and adequate manner.  Mr. Ingles was deprived of running water, toilet facilities, showers, medication, adequate food for over thirteen (13) days. Mr. Ingles was forced to sleep on the floor of the Intake Cell. Mr. Ingles was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Ingles was exposed to fires set in the Intake Cell by other inmates. Mr. Ingles was assaulted by several inmates and correctional officers on two (2) occasions. Mr. Ingles was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Ingles was left in an Intake Cell without any correctional officers to oversee the inmates. Mr. Ingles was subject to observing another inmate commit suicide. Mr. Ingles was subject to observing another inmate being raped. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Ingles. The Defendant failed to provide adequate supervision of the other inmates in its custody.  The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Ingles' civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody.  The Defendant created and had notice and knowledge of the conditions complained of.

51.    **Jimmy Jerome** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eleven (11) days.  Mr. Jerome was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was

designed and built to only hold twenty-five (25) inmates. Mr. Jerome was placed in an Intake Cell for eleven (11) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Jerome to a cell/housing unit in a timely and adequate manner.  Mr. Jerome was deprived of running water, toilet facilities, showers, medication, adequate food for over eleven (11) days. Mr. Jerome was forced to sleep on the floor of the Intake Cell. Mr. Jerome was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Jerome was exposed to fires set in the Intake Cell by other inmates. Mr. Jerome was assaulted by several inmates and correctional officers. Mr. Jerome was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Jerome was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Jerome. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Jerome's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody.  The Defendant created and had notice and knowledge of the conditions complained of.

52.   **Gregory Johnson** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for six (6) days.. Mr. Johnson was placed in an Intake Cell for six (6) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Johnson to a cell/housing unit in a timely and adequate manner. Mr. Johnson was deprived of running

water, toilet facilities, showers, medication, adequate food for over six (6) days. Mr. Johnson was forced to sleep on the floor of the Intake Cell. Mr. Johnson was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Johnson was exposed to fires set in the Intake Cell by other inmates. Mr. Johnson was assaulted on two (2) occasions by several inmates and correctional officers. Mr. Johnson was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Johnson was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Johnson. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Johnson's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

53.    **Francisco Medina** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for nine (9) days. Mr. Medina was placed in an Intake Cell for nine (9) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Medina to a cell/housing unit in a timely and adequate manner. Mr. Medina was deprived of running water, toilet facilities, showers, medication, adequate food for over nine (9) days. Mr. Medina was forced to sleep on the floor of the Intake Cell. Mr. Medina was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Medina was exposed to fires set in the Intake Cell by other inmates. Mr.

Medina was assaulted by several inmates and correctional officers. Mr. Medina was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Medina was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Medina. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Medina's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

54.     **Anthony O'Neil** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for nine (9) days. Mr. O'Neil was placed in an Intake Cell for nine (9) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. O'Neil to a cell/housing unit in a timely and adequate manner. Mr. O'Neil was deprived of running water, toilet facilities, showers, medication, adequate food for over nine (9) days. Mr. O'Neil was forced to sleep on the floor of the Intake Cell. Mr. O'Neil was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. O'Neil was exposed to fires set in the Intake Cell by other inmates. Mr. O'Neil was assaulted by several inmates and correctional officers on three (3) occasions. Mr. O'Neil was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. O'Neil was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers

on staff to process, protect and oversee Mr. O'Neil. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. O'Neil's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

55.    **Anthony Orta** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for eighteen (18) days. Mr. Orta was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates.  Mr. Orta was placed in an Intake Cell for eighteen (18) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Orta to a cell/housing unit in a timely and adequate manner.  Mr. Orta was deprived of running water, toilet facilities, showers, medication, adequate food for over eighteen (18) days. Mr. Orta was forced to sleep on the floor of the Intake Cell. Mr. Orta was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Orta was exposed to fires set in the Intake Cell by other inmates. The Defendant permitted Mr. Orta to be assaulted by several inmates. Mr. Orta was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Orta was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Orta. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its

correctional officers. The Defendant violated Mr. Guerriero's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody.  The Defendant created and had notice and knowledge of the conditions complained of.

56.    **Freddy Perez** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for nine (9) days.  Mr. Perez was placed in an Intake Cell for nine (9) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Perez to a cell/housing unit in a timely and adequate manner.  Mr. Perez was deprived of running water, toilet facilities, showers, medication, adequate food for over nine (9) days. Mr. Perez was forced to sleep on the floor of the Intake Cell. Mr. Perez was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Perez was exposed to fires set in the Intake Cell by other inmates. Mr. Perez was assaulted by several inmates and correctional officers. Mr. Perez was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Perez was left in an Intake Cell without any correctional officers to oversee the inmates. Mr. Perez was subject to observing another inmate commit suicide. Mr. Perez was subject to observing another inmate being raped. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Perez. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Perez's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who is in the Defendant's custody.  The Defendant created and had notice and knowledge of the conditions complained of.

57.    **Gary Richardson** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for ten (10) days.    Mr. Richardson was placed in an Intake Cell for ten (10) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Richardson to a cell/housing unit in a timely and adequate manner.    Mr. Richardson was deprived of running water, toilet facilities, showers, medication, adequate food for over ten (10) days. Mr. Richardson was forced to sleep on the floor of the Intake Cell. Mr. Richardson was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Richardson was exposed to fires set in the Intake Cell by other inmates. Mr. Richardson was assaulted by several inmates. Mr. Richardson was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Richardson was left in an Intake Cell without any correctional officers to oversee the inmates. Mr. Richardson was subject to observing another inmate commit suicide. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Richardson. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Richardson's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody.  The Defendant created and had notice and knowledge of the conditions complained of.

58.    **Jimmy Rodriguez** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for six (6) days. Mr. Rodriguez was placed in an Intake Cell for six (6) days when he was only supposed to be held

in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Rodriguez to a cell/housing unit in a timely and adequate manner.  Mr. Rodriguez was deprived of running water, toilet facilities, showers, medication, adequate food for over six (6) days. Mr. Rodriguez was forced to sleep on the floor of the Intake Cell. Mr. Rodriguez was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Rodriguez was exposed to fires set in the Intake Cell by other inmates. Mr. Rodriguez was assaulted by several inmates on two (2) occasions and correctional officers. Mr. Rodriguez was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Rodriguez was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Rodriguez. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Rodriguez's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

59.    **Joshua Santiago** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for twenty-three (22) days. Mr. Santiago was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates.  Mr. Santiago was placed in an Intake Cell for twenty-three (23) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Santiago to a cell/housing unit in a timely and adequate manner.  Mr. Santiago was deprived of running

water, toilet facilities, showers, medication, adequate food for over twenty-three (23) days. Mr. Santiago was forced to sleep on the floor of the Intake Cell. Mr. Santiago was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Santiago was exposed to fires set in the Intake Cell by other inmates. Mr. Santiago was assaulted by several inmates and correctional officers. Mr. Santiago was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Santiago was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Santiago. in a safe and proper manner. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Santiago's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

60.    **Travis Scott** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for nine (9) days. Mr. Guerriero was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates.  Mr. Scott was placed in an Intake Cell for nine (9) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Scott to a cell/housing unit in a timely and adequate manner.  Mr. Scott was deprived of running water, toilet facilities, showers, medication, adequate food for over nine (9) days. Mr. Scott was forced to sleep on the floor of the Intake Cell. Mr. Scott was exposed to urine and feces on the floor of the Intake Cell

because other inmates relieved themselves on the floor of the Intake Cell. Mr. Scott was exposed to fires set in the Intake Cell by other inmates. Mr. Scott was assaulted by several inmates and correctional officers. Mr. Scott was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Scott was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Scott. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers The Defendant violated Mr. Scott's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

61.    **Victor Smirnov** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for five (5) days. Mr. Smirnov was held in an Intake Cell with over fifty (50) other inmates when the Intake Cell was designed and built to only hold twenty-five (25) inmates. Mr. Smirnov was placed in an Intake Cell for five (5) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Smirnov to a cell/housing unit in a timely and adequate manner. Mr. Smirnov was deprived of running water, toilet facilities, showers, medication, adequate food for over five (5) days. Mr. Smirnov was forced to sleep on the floor of the Intake Cell. Mr. Smirnov was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Smirnov was exposed to fires set in the Intake Cell by other inmates. Mr. Smirnov was assaulted by several inmates and correctional officers. Mr. Smirnov was exposed to a chemical agent and the

Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Smirnov was left in an Intake Cell without any correctional officers to oversee the inmates. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Smirnov. The Defendant failed to provide adequate supervision of the other inmates in its custody. The Defendant failed to properly hire, train and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Smirnov's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody. The Defendant created and had notice and knowledge of the conditions complained of.

62.     **Justin Smith** was caused to sustain severe and permanent psychological and physical injuries when he was placed and held in an Intake Cell for twenty-two (22) days. Mr. Smith was placed in an Intake Cell for twenty-two (22) days when he was only supposed to be held in the Intake Cell for one (1) day. The Defendant failed to process and assign Mr. Smith to a cell/housing unit in a timely and adequate manner.  Mr. Smith was deprived of running water, toilet facilities, showers, medication, adequate food for over twenty-two (22) days. Mr. Smith was forced to sleep on the floor of the Intake Cell. Mr. Smith was exposed to urine and feces on the floor of the Intake Cell because other inmates relieved themselves on the floor of the Intake Cell. Mr. Smith was exposed to fires set in the Intake Cell by other inmates. Mr. Smith was assaulted by several inmates and correctional officers. Mr. Smith was exposed to a chemical agent and the Defendant failed to properly and adequately decontaminate the Intake Cell. Mr. Smith was left in an Intake Cell without any correctional officers to oversee the inmates. Mr. Smith was subject to observing another inmate commit suicide. The Defendant failed to have sufficient correctional officers on staff to process, protect and oversee Mr. Smith. The Defendant failed to provide adequate supervision of the

other inmates in its custody. The Defendant failed to properly hire, train, and supervise personnel to oversee and supervise its correctional officers. The Defendant violated Mr. Smith's civil rights in failing to provide for the safety, care and well-being of the Plaintiff who was in the Defendant's custody.   The Defendant created and had notice and knowledge of the conditions complained of.

63.    As set forth in the preceding paragraphs, Plaintiffs were forced to endure unspeakable conditions for the duration of their time in the Intake Cell in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and the Constitution of the State of New York.

## **FIRST CAUSE OF ACTION**

### **( 42 U.S.C. §1983 – Monell Liability – The City of New York )**

64.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

65.    The City of New York has been aware of the deplorable and dangerous conditions at Rikers as set forth in this Complaint since at least 2014 and has done nothing to ameliorate the situation. Such conditions include extreme overcrowding, insufficient, under-trained and unqualified staff, and crumbling, unsafe infrastructure. The City of New York has a long-standing and de facto policy of understaffing Rikers Island.

66.    The City of New York's actions, omissions and policies resulted in multiple deprivations of Plaintiffs' constitutional rights. Defendant subjected Plaintiffs to dangerous, unsanitary and inhumane conditions in violation of Plaintiffs' rights afforded by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

## SECOND CAUSE OF ACTION
### (Violation of Plaintiffs' Rights Under the Constitution of the State of New York and Tort)

67.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

68.    The City of New York has been aware of the deplorable and dangerous conditions at Rikers as set forth in this Complaint since at least 2014 and has done nothing to ameliorate the situation. Such conditions include extreme overcrowding, insufficient, under-trained and unqualified staff, and crumbling, unsafe infrastructure. The City of New York has a long-standing and de facto policy of understaffing Rikers Island.

69.    Employees of the City of New York and the Department of Corrections created and allowed to continue horrifying conditions that endangered the health and safety of detainees and deprived them of basic human necessities.

70.    The City of New York's actions, omissions and policies resulted in multiple deprivations of Plaintiffs' rights under the Constitution of the State of New York.

## THIRD CAUSE OF ACTION
### (Negligence)

71.    Plaintiffs hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

72.    As custodian of Plaintiffs, Defendant had a duty of care to Plaintiffs to provide a safe and sanitary environment in which to be detained.

73.    Defendant' actions and inaction were the direct and proximate cause of Plaintiffs' injuries, as the result of which, Defendant is liable to Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the Constitution of the United States and the Constitution of the State of New York;

B.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries;

C.    An award of compensatory and punitive damages, in an amount to be determined at trial;

D.    An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorney's fees and costs to the fullest extent permitted by laws; and

E.    Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: November 16, 2022
        New York, New York                         Respectfully submitted,

DANNY GRACE PLLC
*ATTORNEYS FOR PLAINTIFF*

225 BROADWAY, SUITE 1200
NEW YORK, NY 10007
(516)748-9848


_____/s/_____
DANIEL GRACE, ESQ.
DOUGLAS MACE, ESQ.


ESTRIN & BENN LLC
*OF -COUNSEL*

225 BROADWAY, SUITE 1200
NEW YORK, NY 10007
(212) 962-0800

_____/s/_____
MELVIN ESTRIN, ESQ.
PATRICK BENN, ESQ.